1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

KYLE POFFENROTH, individually and on behalf of all others similarly situated,

10

*Plaintiff*,

11

*v.*

12

13

RENTGROW, INC., a Delaware corporation,

14

*Defendant*.

Case No.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

15

16    Plaintiff Kyle Poffenroth brings this case, individually and on behalf of all others

17 similarly situated, against Defendant RentGrow, Inc. to enjoin and obtain redress for all persons

18 injured by Defendant's failure to follow reasonable procedures to ensure maximum possible

19 accuracy of the information in their consumer reports. Plaintiff alleges as follows:

20                          **NATURE OF THE ACTION**

21    1.    Defendant RentGrow, Inc. ("RentGrow") is a consumer reporting agency that

22 provides online tenant screening services for landlords throughout the country in violation of the

23 Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA").

24    2.    RentGrow's tenant screening reports include consumer information regarding the

25 prospective tenant's credit history, criminal history, civil court records, rental history, and a

26 name search from the Office of Foreign Assets Control.

27

CLASS ACTION COMPLAINT
Case No.

- 1 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1    3.    The residential and tenant payment information contained in a RentGrow tenant

2  screening report is based on information collected by various sources, including "Experian

3  RentBureau."

4    4.    Landlords and property management companies purchase RentGrow reports when

5  making leasing decisions regarding prospective tenants. RentGrow applies the results of its

6  tenant screening report against the housing acceptance criteria chosen by the landlord or property

7  management company.

8    5.    Because of the exclusive reliance on RentGrow's consumer report, many

9  prospective tenants' ability to obtain quality housing is solely based on RentGrow's practices.

10    6.    As such, any inaccurate information on a RentGrow consumer report can cause

11  the prospective tenant to suffer significant consequences, including rejection of quality housing

12  for improper or erroneous reasons, substantial delay in finding available housing, and increased

13  expenses.

14    7.    RentGrow generates consumer reports in an unreasonable manner in violation of

15  the FCRA by preparing consumer reports for landlords, property management companies, and

16  third parties without following reasonable procedures to ensure maximum possible accuracy of

17  the information.

18    8.    In further violation of the FCRA, RentGrow makes the initial problem of

19  inaccurate consumer reports worse by failing to conduct a proper re-investigation when notified

20  that their report includes inaccurate information and by failing to correct any inaccuracies on

21  their consumer reports.

22    9.    RentGrow's dissemination of consumer reports in violation of the FCRA

23  substantially exacerbates the inherent stress accompanied with the process of locating available

24  housing and transitioning to a new residence.

25    10.    Here, RentGrow failed to comply with the FCRA when it included inaccurate

26  residential history on Plaintiff's screening report.

27

CLASS ACTION COMPLAINT
Case No.                                  - 2 -

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1       11.     As a result, a property management company denied housing to Plaintiff for

2  which he should have qualified.

3       12.     Plaintiff, on behalf of himself and a Class of similarly situated individuals, brings

4  this lawsuit to enjoin Defendant from its ongoing unlawful practices, to redress the damages

5  incurred, and to obtain other appropriate relief.

6                                  **PARTIES**

7       13.     Plaintiff Kyle Poffenroth is a natural person who is domiciled in the State of

8  Washington.

9       14.     RentGrow is a corporation organized under the laws of Delaware, with its

10  principal place of business at 307 Waverly Oaks Road, Suite 301, Waltham, Massachusetts

11  02452. RentGrow conducts business throughout this District, Washington State, and the United

12  States.

13                       **JURISDICTION AND VENUE**

14       15.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1331, and under the

15  FCRA, 15 U.S.C. § 1681(p), because Plaintiff commenced this action within two years after the

16  date of discovering the violation of federal law.

17       16.     The Court has personal jurisdiction over Defendant because Defendant conducts

18  significant business transactions in this District, and because the wrongful conduct occurred in

19  and emanated from this District.

20       17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

21  part of the events giving rise to Plaintiff's claims occurred in this District.

22                      **FACTUAL ALLEGATIONS**

23       18.     Originally enacted in 1970, the FCRA requires consumer reporting agencies to

24  adopt reasonable procedures for meeting the needs of commerce with respect to accuracy,

25  relevancy, and proper utilization of consumer information, among other things. *See* 15 U.S.C. §

26  1681e(b).

27

CLASS ACTION COMPLAINT
Case No.

- 3 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1    19.    In passing the FCRA, Congress described the vital role played by consumer

2  reporting agencies—such as RentGrow—in assembling and evaluating consumer credit and other

3  information, and the need for such entities to exercise their "grave responsibilities" with fairness,

4  impartiality, and a respect for the consumer's right to privacy.

5    20.    In recent years, the Consumer and Financial Protection Bureau ("CFPB")—a

6  federal agency with authority to enforce the FCRA—has commented that credit reports,

7  including those considered by landlords when deciding to approve a potential renter, "have come

8  to play an even more fundamental role in determining whether and how each of us will be able to

9  take advantage of opportunities to shape our futures."[1]

10    21.    In 2015, the CFPB commented that while most consumers are generally aware "of

11  the big three credit reporting agencies [TransUnion, Equifax, and Experian] ("CRAs"), there is

12  little familiarity with the many smaller companies that cater to certain specialty markets, such as

13  screening tenants or job applicants."[2]

14    22.    The FCRA defines a "consumer reporting agency" as "any person which, for

15  monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in

16  the practice of assembling or evaluating consumer credit information or other information on

17  consumers for the purpose of furnishing consumer reports to third parties, and which uses any

18  means or facility of interstate commerce for the purpose of preparing or furnishing consumer

19  reports." 15 U.S.C. § 1681a(f).

20    23.    Additionally, the FCRA provides: "if the completeness or accuracy of any item of

21  information contained in a consumer's file at a consumer reporting agency is disputed by the

22

23  [1]    Consumer Financial Protection Bureau, *Prepared Remarks of CFPB Director Richard Cordray at the Consumer Advisory Board Meeting*, Feb. 19, 2015, available at

24  https://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-of-cfpb-director-richard-cordray-at-the-consumer-advisory-board-meeting-20150219/.

25  [2]    Consumer Financial Protection Bureau, *Prepared Remarks of CFPB Director Richard Cordray at the Consumer Advisory Board Meeting*, Feb. 19, 2015, available at

26  https://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-of-cfpb-director-richard-cordray-at-the-consumer-advisory-board-meeting-20150219/.

27

CLASS ACTION COMPLAINT
Case No.

- 4 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1   consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such

2   dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine

3   whether the disputed information is inaccurate and record the current status of the disputed

4   information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A).

5      24.   RentGrow regularly assembles and maintains files on consumers relating to

6   residential or tenant history that is included on tenant screening reports for sale.

7      25.   RentGrow purchases records pertaining to consumer's rental history from one or

8   more private vendors, including TransUnion, Equifax, and Experian, for the purpose of creating

9   and selling consumer reports to third party landlords and rental property managers.

10     26.   In 2010, Experian purchased a company called RentBureau, a specialty credit

11  reporting agency that concentrates on the multifamily rental industry. RentBureau was known for

12  its program that allowed participating property management companies to immediately feed

13  positive and negative rent payment information directly to a credit reporting agency. Through its

14  purchase of RentBureau, Experian offers a specialty credit reporting service regarding residential

15  tenant history under the name "Experian RentBureau."

16     27.   Experian claims that every 24 hours, Experian RentBureau receives updated

17  rental payment history data from property owners/managers, electronic rent payment services

18  and collection companies, to immediately make that information available to the multifamily

19  industry through their resident screening partners.

20     28.   The CFPB describes the activities of "Experian RentBureau" as follows:

21  "[c]ollects rent payment history data and makes that information available to the multifamily

22  housing industry through tenant screening reporting companies. Experian also includes some

23  positive rent data it receives from Experian RentBureau in its standard credit reports."[3]

24

25  ─────────────────
   [3]   Consumer Financial Protection Bureau, Tenant Screening, Experian RentBureau,
26  available at https://www.consumerfinance.gov/consumer-reporting-companies/companies-
   list/experian-rent-bureau (last visited November 6, 2019).
27

CLASS ACTION COMPLAINT
Case No.                          - 5 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

29.    RentGrow assembles its screening report by purchasing rental history records from various entities, including Experian RentBureau.

30.    RentGrow collects and includes consumer information purchased from third parties, such as Experian RentBureau, in tenant screening reports it sells to landlords and rental property managers.

31.    Although the third-party landlords and rental property managers establish their own eligibility criteria for prospective tenants, their assessment of prospective tenants is based on the tenant profiles furnished by RentGrow's data and consumer reports.

32.    The rental history records RentGrow purchases from third parties, such as Experian RentBureau, contain inaccurate or outdated information.

33.    RentGrow fails to follow reasonable procedures to ensure maximum possible accuracy of the information contained in its consumer reports about residential or tenant payment history.

34.    RentGrow knows or reasonably should know that third parties, landlords and rental property managers will rely—in many instances, solely—on RentGrow's consumer report in making a decision whether to rent an apartment to a potential consumer.

35.    As set forth in greater detail below, RentGrow has improperly exercised its "grave responsibilities" described by the CFPB in the tenant screening market in violation of the FCRA by unlawfully preparing inaccurate consumer reports as a part of its tenant screening report.

36.    Defendant's failure to comply with the FCRA has damaged Plaintiff and similarly situated individuals.

## FACTS SPECIFIC TO PLAINTIFF

37.    On April 29, 2018, Plaintiff took a tour of Atlas Apartments ("Atlas"), a modern apartment complex located at 1036 7th Avenue NW, Issaquah, Washington 98027.

38.    The same day, Plaintiff registered to submit a rental application through Atlas's website, and subsequently paid a $295.00 application and administrative fee.

CLASS ACTION COMPLAINT
Case No.

- 6 -

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

39.     On information and belief, the Atlas application advised Plaintiff that a credit check was required, and that Atlas utilized RentGrow for its consumer reporting services.

40.     Later in the day on April 29, 2018, and less than an hour after submitting his online application for an Atlas apartment, Plaintiff received a phone call from an Atlas employee who said that his rental application had been denied due to an open collections notice on his credit report.

41.     Plaintiff told the Atlas employee that he disputed the accuracy of the open collections information on his credit report.

42.     The Atlas employee advised Plaintiff that only RentGrow could resolve the disputed inaccuracy.

43.     On April 29, 2018 and following Plaintiff's conversation with Atlas, Plaintiff disputed the accuracy of the open collections item with RentGrow and requested a copy of his tenant screening report.

44.     Also on April 29, 2018, and in order to determine the reason for the inaccuracy on his consumer report, Plaintiff obtained a current summary and detailed credit report from TransUnion, Equifax, and Experian.

45.     The TransUnion, Equifax, and Experian summaries and detailed credit reports showed that, as of April 2018, Plaintiff was current on all open accounts, did not have any delinquent accounts, and did not have any collection activity on his credit history.

46.     In 2015, however, Plaintiff's credit reports from Equifax and TransUnion showed an inaccurate open collections item in the amount of $4,447, dated January 23, 2015, owed to a debt collection agency called Fair Collections & Outsourcing ("Fair Collections").

47.     On information and belief, Plaintiff's 2015 credit report from Experian also showed the inaccurate Fair Collections matter.

48.     The Fair Collections matter related to an alleged indebtedness following Plaintiff's tenancy at his former residence.

CLASS ACTION COMPLAINT
Case No.

- 7 -

49.     At the time Plaintiff ended his tenancy underlying the Fair Collections matter, he paid all of the rent that was due, left his tenancy with a zero balance, and he did not owe any additional money to his former landlord.

50.     Accordingly, the Fair Collections debt had been inaccurately reported on his 2015 credit reports.

51.     Although Plaintiff was aware of the alleged 2015 Fair Collections debt, Plaintiff believed the matter had been resolved in or around 2017. Plaintiff, through his then-counsel, sent documentation to Fair Collections showing Plaintiff had paid all of the rent due under the lease, left the tenancy with a zero balance, and did not owe any additional money.

52.     The alleged debt did not appear on Plaintiff's subsequent credit reports.

53.     Indeed, the April 2018 Experian credit report showed that Plaintiff had no collections activity, and the 2015 Fair Collections matter did not appear on any of the 2018 credit reports.

54.     On May 1, 2018, RentGrow provided Plaintiff with a copy of his tenant screening report, which showed the inaccurate debt allegedly owed to Fair Collections from 2015 based upon information provided through Experian RentBureau.

55.     The Fair Collections debt never should have been included on RentGrow's screening report since the inaccurate information was successfully disputed and subsequently removed from each of Plaintiff's 2018 credit reports issued by TransUnion, Equifax, and Experian.

56.     Even though Plaintiff had already resolved the inaccurately reported debt—which had been properly removed and did not appear on any of the big three credit bureau's reports—RentGrow's procedures resulted in the Fair Collections matter reappearing on its tenant screening report.

CLASS ACTION COMPLAINT
Case No.                                                   - 8 -

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1    57.    Unfortunately, after discovering that the inaccuracy had again resurfaced in the

2  2018 RentGrow report, and after Plaintiff brought the inaccuracy to RentGrow's attention,

3  RentGrow doubled down on its inaccurate reporting.

4    58.    On May 9, 2018, RentGrow e-mailed Plaintiff to advise him that their re-

5  investigation had been completed and that it was upholding the inaccuracy that resulted in the

6  denial of his rental application.

7    59.    Additionally, RentGrow would not remove the disputed information concerning

8  the 2015 Fair Collections matter from Plaintiff's tenant screening report to prevent the

9  inaccuracy from reappearing on future reports. No explanation or reason was given for the

10  decision.

11    60.    Instead, RentGrow's e-mail attached a series of documents showing RentGrow

12  relied on Experian RentBureau to compile Plaintiff's consumer renter history. The Experian

13  RentBureau documents included the inaccurate information concerning the Fair Collections

14  matter that reappeared on Plaintiff's report.

15    61.    In fact, Plaintiff only learned that a RentGrow screening report about him

16  contained inaccurate consumer information because Plaintiff's rental application was rejected

17  and he subsequently requested a copy of his screening report from RentGrow.

18    62.    Otherwise, Plaintiff did not know and had no reason to believe a RentGrow

19  screening report about him contained inaccurate information.

20    63.    On information and belief, the disputed and inaccurate information concerning the

21  2015 Fair Collections matter would reappear on a RentGrow screening report issued today about

22  Plaintiff.

23    64.    As a result of the events described above, and as a direct and proximate result of

24  the inaccurate information contained in RentGrow's tenant screening report, Plaintiff was denied

25  rights provided under the FCRA, denied residential housing, incurred additional costs to address

26

27

CLASS ACTION COMPLAINT
Case No.                          - 9 -

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1    the inaccuracies contained in RentGrow's consumer report, suffered damage to his reputation,

2    embarrassment, mental and emotional distress.

3                                    **CLASS ALLEGATIONS**

4        65.    **Class Definition:** Plaintiff brings this action pursuant to Federal Rule of Civil

5    Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class defined as follows:

6                All persons in the United States who: (1) were the subject of a consumer
7                report provided by RentGrow; (2) containing a reappearance of previously
                 corrected inaccurate information; (3) about residential or tenant payment
8                history.

9        The following people are excluded from the Class: (1) any Judge or Magistrate presiding

10   over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

11   successors, predecessors, and any entity in which Defendant or its parent has a controlling

12   interest and their current or former employees, officers and directors; (3) Defendant's insurer or

13   its parent having a controlling interest and their current or former employees, officers and

14   director; (4) persons who properly execute and file a timely request for exclusion from the Class;

15   (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise

16   released; (6) Plaintiff's counsel and Defendant's counsel; and (7) the legal representatives,

17   successors, and assigns of any such excluded persons.

18       66.    **Numerosity:** The exact number of members in the Class is unknown and not

19   available to Plaintiff, but it is clear that individual joinder is impracticable. On information and

20   belief, hundreds or thousands of consumers fall into the definition of the Class based on

21   Defendant's volume of business. Members of the Class can be identified through Defendant's

22   records.

23       67.    **Adequate Representation:** Plaintiff will fairly and adequately protect the

24   interests of the Class, and has retained counsel competent and experienced in complex class

25   actions. Plaintiff has no interests antagonistic to those of the Class, and RentGrow has no

26   defenses unique to Plaintiff.

27

CLASS ACTION COMPLAINT
Case No.

- 10 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

68.     **Policies Generally Applicable to the Class:** This class action is appropriate for certification because RentGrow has acted in violation of the FCRA or refused to comply with the FCRA on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. RentGrow's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on RentGrow's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

69.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

          a) Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy of the information contained in consumer reports about residential or tenant history;

          b) Whether Defendant's violations of the FCRA were willful; and

          c) The proper measure of damages.

70.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct in violation of the FCRA.

71.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective

CLASS ACTION COMPLAINT
Case No.

- 11 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1  relief from Defendant's misconduct. Even if members of the Class could sustain such individual

2  litigation, it would still not be preferable to a class action, because individual litigation would

3  increase the delay and expense to all parties due to the complex legal and factual controversies

4  presented in this Complaint. By contrast, a class action presents far fewer management

5  difficulties and provides the benefits of single adjudication, economies of scale, and

6  comprehensive supervision by a single Court. Economies of time, effort and expense will be

7  fostered, and uniformity of decisions ensured.

8
                                    **CAUSE OF ACTION**
9                               **15 U.S.C. § 1681,** *et seq.*
                            <u>**On behalf of Plaintiff and the Class**</u>

10      72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

11      73.     15 U.S.C. § 1681e(b) states that "[w]henever a consumer reporting agency

12  prepares a consumer report it shall follow reasonable procedures to assure maximum possible

13  accuracy of the information concerning the individual about whom the report relates."

14      74.     Defendant is a consumer reporting agency that prepares consumer reports for

15  third parties by preparing tenant screening reports that contain consumer's residential or tenant

16  history.

17      75.     Defendant failed to establish or follow reasonable procedures to assure maximum

18  possible accuracy of the information concerning Plaintiff and each member of the Class in

19  violation of 15 U.S.C. § 1681e(b).

20      76.     At all relevant times, Defendant failed to establish or follow reasonable

21  procedures to prevent previously deleted inaccurate information about residential or tenant

22  history from reappearing on its consumer reports about Plaintiff and each member of the Class in

23  violation of 15 U.S.C. § 1681e(b).

24      77.     Defendant's failure to establish or follow reasonable procedures to comply with

25  the FCRA was done negligently.

26

27

CLASS ACTION COMPLAINT                         - 12 -            **EMERY | REDDY, PLLC**
Case No.                                                        600 Stewart Street, Suite 1100
                                                                Seattle, Washington 98101
                                                                TEL: 206.512.8408 | FAX: 206.441.9711

1    78.    On information and belief, Defendant's failure to establish or follow reasonable

2    procedures to comply with the FCRA was done willfully.

3    79.    As a direct and proximate result of Defendant's violations of the FCRA, Plaintiff

4    and each member of the Class: were denied rights provided by the FCRA; were denied

5    residential housing; incurred additional costs to address the inaccuracies contained in

6    Defendant's consumer report; suffered damage to reputation, embarrassment, mental and

7    emotional distress.

8    80.    Accordingly, Defendant is liable to Plaintiff and each member of the Class

9    pursuant to 15 U.S.C. § 1681n and § 1681o for actual damages and/or statutory damages,

10   punitive damages, costs, and attorneys' fees.

11                          **VIII. PRAYER FOR RELIEF**

12       WHEREFORE, Plaintiff Kyle Poffenroth, individually and on behalf of each member of

13   the Class, prays for the following relief:

14   A.    An order certifying the Class as defined above, appointing Plaintiff Kyle

15   Poffenroth as representative of the Class, and appointing his counsel as Class Counsel;

16   B.    An order declaring the Defendant's actions violate the FCRA;

17   C.    An injunction requiring Defendant to comply with the provisions of the FCRA;

18   D.    An order declaring Defendant acted negligently and/or willfully in disregard of

19   the rights of Plaintiff and each member of the Class under the FCRA;

20   E.    An order awarding actual, statutory and/or punitive damages for Defendant's

21   violations of the FCRA;

22   F.    An order awarding reasonable attorneys' fees and costs;

23   G.    An order entering judgment for further injunctive and/or declaratory relief as

24   necessary to protect the interests of Plaintiff and each member of the Class;

25   H.    An order awarding such other and further relief as equity and justice require.

26

27

CLASS ACTION COMPLAINT
Case No.                    - 13 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

1

**JURY DEMAND**

2

Plaintiff requests a trial by jury of all claims that can be so tried.

3

4

Respectfully submitted this 7th day of April, 2020.

5

EMERY | REDDY, PLLC

6

By:   *s/ Patrick B. Reddy*

7
PATRICK B. REDDY
WSBA No. 34092

8
600 Stewart Street, Suite 1100
Seattle, WA 98101

9
Phone: (206) 442-9106
Fax: (206) 441-9711

10
reddyp@emeryreddy.com

11
Attorneys for Plaintiff and the Putative Class

12
EMERY | REDDY, PLLC

13

By:   *s/ Timothy W. Emery*

14
TIMOTHY W. EMERY
WSBA No. 34078

15
600 Stewart Street, Suite 1100
Seattle, WA 98101

16
Phone: (206) 442-9106
Fax: (206) 441-9711

17
emeryt@emeryreddy.com

18
Attorneys for Plaintiff and the Putative Class

19
EDELSON PC

20

By:   *s/ Jay Edelson*

21
Jay Edelson*
350 North LaSalle Street, 14th Floor

22
Chicago, Illinois 60654
Telephone: 312.589.6370

23
Fax: 312.589.6378
jedelson@edelson.com

24
Attorneys for Plaintiff and the Putative Class
*Pro hac vice* admission to be sought.

25

26

27

CLASS ACTION COMPLAINT
Case No.

- 14 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711

EDELSON PC

By:     *s/ Benjamin H. Richman*
        Benjamin H. Richman*
        350 North LaSalle Street, 14th Floor
        Chicago, Illinois 60654
        Telephone: 312.589.6370
        Fax: 312.589.6378
        brichman@edelson.com
        Attorneys for Plaintiff and the Putative Class
        *Pro hac vice* admission to be sought.

EDELSON PC

By:     *s/ Theo J. Benjamin*
        Theo J. Benjamin*
        350 North LaSalle Street, 14th Floor
        Chicago, Illinois 60654
        Telephone: 312.589.6370
        Fax: 312.589.6378
        tbenjamin@edelson.com
        Attorneys for Plaintiff and the Putative Class
        *Pro hac vice* admission to be sought.

CLASS ACTION COMPLAINT
Case No.

- 15 -

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
TEL: 206.512.8408 | FAX: 206.441.9711